IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CR-129 |
| | ) | |
| BRIAN O'KEITH BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cathierne C. Eagles, District Judge.

The defendant-inmate, Brian Brown, asks the Court to reduce his sentence pursuant to the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A). Because Mr. Brown has not asked the warden to file a motion for compassionate release on his behalf which is required by statute before he can file such a motion himself, and because he has not shown good cause to waive the exhaustion requirement, the motion will be denied without prejudice.

In 2019, Mr. Brown pled guilty to one count of distribution of cocaine base, Minute Entry 05/06/ 2019; Doc. 14, and was sentenced to 60 months in the custody of the Bureau of Prisons.[1] Minute Entry 08/20/2019; Doc. 22. He filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), on June 1, 2020, asking the Court to reduce his sentence. Doc. 26. The Court set a deadline for the Government

---

[1] Mr. Brown says in his motion that he is serving an 84-month sentence, Doc. 26 at 1, but that does not appear to be correct.

to respond and directed the Government to submit any Bureau of Prison medical records if it disputed Mr. Brown's medical claims.  Doc. 27.  The Court authorized the defendant to file a reply brief and supplemental evidence if appropriate.  *Id.*  The Government filed medical records, Doc. 29, and both the government and defense counsel promptly filed briefs.  Docs. 28, 30.  The motion is ripe for decision.

Courts do not have unfettered authority to modify criminal sentences, *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010), but § 3582(c)(1)(A) does authorize courts to reduce a defendant's sentence upon a showing of extraordinary and compelling reasons, subject to exhaustion of administrative remedies and consideration of the sentencing factors in § 3553(a).  Specifically as to exhaustion, § 3582(c)(1)(A) authorizes courts, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," to reduce the term of the defendant's imprisonment.

Whether Mr. Brown has exhausted his administrative remedies is a thorny question, both factually and legally.  There is a factual dispute over whether he has asked the warden to file a motion for compassionate release on his behalf.  And there is an unsettled legal question as to whether courts can waive or excuse exhaustion when the government properly invokes it as a defense.

Neither side has submitted any evidence in support of factual assertions made in the motion and briefs about whether and when Mr. Brown asked the warden to file a

2

compassionate release motion on his behalf.  In his *pro se* motion, Mr. Brown says he submitted a request for compassionate release to the warden on April 13, 2020, and that as of May 18, 2020, he had not received a response.  Doc. 26 at 4.  He did not include a copy of his request with his motion.  In its response, the Government reports that an unnamed person on behalf of the Government consulted a named BoP attorney, who informed the Government's representative that her review of Mr. Brown's records showed he had been "denied home confinement under the CARES Act" and he "has not submitted a Reduction in Sentence request to initiate a BOP administrative review for compassionate release."  Doc. 28 at 7–8, 11.  The Government did not indicate when the purported CARES Act request was made or denied, and it did not attach a copy of Mr. Brown's purported CARES Act request or the denial.  Mr. Brown, now acting through counsel, submitted no evidence with his reply brief about his request to the BoP and instead contends that the exhaustion requirement should be waived.  *See* Doc. 30.

Compassionate release motions seek a sentence reduction, and the rules of evidence do not strictly apply to sentencing proceedings.  *See United States v. Seay*, 553 F.3d 732, 741–42 (4th Cir. 2009); *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *12 (N.D.N.Y. Apr. 23, 2020), *reconsideration denied* (June 22, 2020) (concluding any relevant evidence having sufficient indicia of reliability can be considered in connection with a § 3582(c)(1)(A) compassionate release motion).  The Court assumes without deciding that it can consider both Mr. Brown's unsworn statements in his motion and the Government's hearsay evidence as reported by an officer of the court in a brief about unsworn, out-of-court statements made by a BoP

3

attorney.  Ordinarily, neither would be entitled to much weight, given their quality.[2]  Here, however, they are the only pieces of "evidence" presented.

As best the Court can tell, Mr. Brown bears the burden to show that he has satisfied the exhaustion requirement in § 3582(c)(1)(A).  *See United States v. Graves*, No. 7:16-cr-00056, 2020 WL 2847631, at *2 (W.D. Va. June 2, 2020).  As he has not disagreed in his reply brief with the Government's assertion that his request to the warden was a CARES Act request, not a compassionate release request, nor has his attorney provided a copy of the request, the Court finds that Mr. Brown did not ask the warden to file a compassionate release motion on his behalf.[3]  He therefore has not complied with a mandatory statutory prerequisite to filing a motion for compassionate release.

When a defendant fails to ask the warden to file a § 3582(c)(1)(A) motion on his behalf and the Government does not waive the exhaustion requirement, the defendant's motion would ordinarily be denied without prejudice.  Here, however, Mr. Brown asks the Court to waive the exhaustion requirement because of his health conditions in combination with COVID-19 and because of inadequate measures to control the spread

---

[2] Since both sides agree that Mr. Brown submitted a written request of some sort, it is difficult to understand why neither party filed a copy so that this factual dispute could be easily resolved.

[3] The defendant attached an unpublished case to his reply brief that treated a request for relief under the CARES Act as a request for compassionate release.  *See United States v. Feucht*, No. 11-CR-60025, 2020 WL 2781600, at *2 (S.D. Fla. May 28, 2020).  In his brief, however, Mr. Brown does not address this aspect of that case's holding, nor does he ask the Court to hold that a CARES Act request can be used to satisfy the exhaustion requirement in § 3582(c).  *See* Doc. 30.  Therefore, the Court will not reach this issue.

4

of infection, lack of sanitary supplies, and the high number of positive cases at LSCI Butner, where he is housed.  *See* Doc. 30 at 2; Doc. 26 at 7–8.

The mere existence of the pandemic does not completely obviate the requirement that an inmate first ask the warden to file the request on his behalf.  Two circuit courts of appeals have so held, *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020); *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), and this Court agrees.  If the pandemic alone were enough to excuse even minimal compliance with the statutory exhaustion requirement, that requirement would be meaningless and the judicially-created exception would swallow the statutorily-created rule.  *See Alam*, 960 F.3d at 835 (noting that "judge-made exceptions to judge-made exhaustion doctrines" are "birds of a different feather" from judge-made exceptions to statutory exhaustion requirements).

That said, it is an open question in this circuit whether the pandemic in conjunction with other factors give courts the equitable authority to waive the exhaustion requirement.  The Sixth Circuit has held that the exhaustion requirement in § 3582(c) is a mandatory claim-processing rule and that there are no equitable exceptions to the requirement, which would appear to foreclose judicial waiver if the government properly invokes the exhaustion requirement.  *See Alam* 960 F. 3d at 835 (rejecting argument that § 3582(c)(1)(A) was subject to judicial waiver).  The Third Circuit has signaled the same. *See Raia*, 954 F.3d at 597 (noting that a failure to file a request asking the warden to file a compassionate release motion "presents a glaring roadblock foreclosing compassionate release" by the courts.)  Many district courts agree.  *See, e.g., United States v. Tallie*, No. 3:11-CR-8-WKW, 2020 WL 3452612, at *1 (M.D. Ala. June 24, 2020); *United States v.*

5

Case 1:19-cr-00129-CCE   Document 31   Filed 07/07/20   Page 5 of 9

*Safford*, No. CR 1:17-00193, 2020 WL 3001668, at *2 (S.D. W.Va. June 4, 2020); *United States v. Feiling*¸ No. 3:19cr112(DJN), 2020 WL 1821457, at *4–5 (E.D. Va. Apr. 10, 2020) (noting that "[t]he mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver" on their own).[4]

But a number of district courts have found that courts can waive the exhaustion requirement in § 3582(c) in certain circumstances. *See Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *2–4 (E.D. Va. June 4, 2020) (rejecting the holding in *Alam* and finding "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19"); *United States v. Bass*, No.1:10-cr-166 (LEK), 2020 WL 2831851, at *4–6 (N.D.N.Y. May 27, 2020). These courts have found waiver appropriate: (1) when it would be futile to ask the warden or the BoP for relief; (2) when the administrative process would be incapable of granting adequate relief; or (3) where pursuing agency review would subject the plaintiffs to undue prejudice. *United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *see also United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *4–5 (D. Conn. Apr. 20, 2020) (waiving exhaustion for inmate with chronic asthma and other respiratory issues because "undue delay in his release could result in catastrophic health consequences"); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (finding that an inmate with limited time left on his sentence and who was recovering from major surgeries

---

[4] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

presented "unique circumstances" that with "the exigency of a rapidly advancing pandemic" justified waiver).

Assuming without deciding that courts can waive the exhaustion requirement when there are other factors in addition to the existence of the pandemic, the Court will not do so here. Mr. Brown has presented no evidence that following the statutorily prescribed exhaustion procedure would be futile. And his evidence of immediate harm or undue prejudice is insufficient to overcome the statutory requirement.

Mr. Brown's medical records do show he has at least one health condition that puts him at a potentially greater risk of complications should he contract the virus. *See* Doc. 29 at 43 (corroborating Mr. Brown has diabetes); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. (indicating the CDC's present view that persons with diabetes are at higher risk).[5] But those same records also indicate that Mr. Brown is receiving appropriate medical care for this and other health issues. Doc. 29 at 4 (indicating defendant has a personal CPAP machine for his sleep apnea); *id* at 18, Doc. 26 at 8 (indicating he is prescribed medication for both his hypertension and diabetes). As best the Court can tell from its lay review of these records,[6] his medical issues are well-controlled and there is

---

[5] According to the CDC, "it is unclear at this time if hypertension is an independent risk factor for severe illness from COVID-19." CLINICAL QUESTIONS ABOUT COVID-19: QUESTIONS AND ANSWERS, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last visited 7/2/2020). Other than unsupported assertions in briefs, neither party has provided any evidence about the threat to people with sleep apnea. *See* Doc. 26 at 8; Doc. 28 at 13.

[6] Neither party has submitted any medical testimony evaluating the care provided by the BoP or whether his high blood pressure, sleep apnea, and diabetes are well-controlled.

no emergency situation sufficient to justify excusing the statutory requirement that he ask the warden to file a compassionate release motion on his behalf.

In addition to his health issues, Mr. Brown's attorney asserts in the reply brief that prison officials at LSCI Butner are taking inadequate steps to reduce the risk that vulnerable inmates like Mr. Brown will contract the virus. Doc. 30 at 2. But he provides no evidence to support his claims. While the Court has no reason to doubt that prison officials restrict access to alcohol-based sanitizers, given the high likelihood that they might be misused, the other assertions are either hyperbolic or meaningless in the absence of some evidence beyond counsel's personal opinions. Such opinions about matters that are actually factual issues add nothing to a request that the Court should waive the exhaustion requirement.

Mr. Brown did not ask the warden to file a compassionate release motion on his behalf as is required by the statute before filing his own § 3582(c)(1)(A) motion, and he has not shown good cause why he should be excused from complying with that requirement. His motion for compassionate release will be denied without prejudice.

Because the denial is without prejudice and Mr. Brown may well refile his motion, the Court makes two observations for the benefit of counsel. First, a motion for compassionate release cannot be granted when the § 3553(a) factors do not support it. Mr. Brown glossed over this requirement, even though he has a substantial criminal record, *see* Doc. 19 at ¶¶24–35, his underlying crime was serious, and he has served barely 20% of his sentence. Mr. Brown has the burden of proof to show that a sentence reduction under § 3582(c)(1)(A) is appropriate, *see, e.g., United States v. Ebbers*, 432 F.

8

Supp. 3d 421, 426 (S.D.N.Y. 2020), and if he refiles his motion after exhaustion, he should address the why the § 3553(a) factors do not counsel against a sentence reduction.

Second, courts make sentencing decisions based on facts, and compassionate release motions should not be any exception. While the Court may be willing to take judicial notice of the BoP website about cases in a particular institution, or the CDC's website for risk factors as they are currently understood, rarely if ever will the facts from these websites be enough for the kind of evaluation called for by the compassionate release statute. The Court appreciates that inmates, even inmates with counsel, often do not have access to medical experts willing to review their situations and offer declarations, and that the government—both the BoP and the U.S. Attorney's Office— is struggling with the volume of compassionate release requests. But at the least counsel could in their briefs direct the Court's attention to such evidence as there is so that the Court is in a better position to find the facts necessary to appropriately evaluate the merits of these serious motions.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 26, is dismissed without prejudice to a renewed motion properly supported by evidence and after exhaustion of his administrative remedies.

This the 7th day of July, 2020.

_____
UNITED STATES DISTRICT JUDGE